UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| MIYAYAMA YUICHI, an individual, | Case No. 2:16-cv-00206-MMD-CWH |
|---|---|
| Plaintiff, | ORDER |
| v. | |
| MTC FINANCIAL INC., dba TRUSTEE CORPS, a California corporation; FEDERAL HOME LOAN MORTGAGE CORPORATION, a federally chartered corporation; and DOES 1-5, inclusive, | |
| Defendants. | |

**I.   SUMMARY**

Plaintiff purchased property encumbered by a first deed of trust and seeks to halt non-judicial foreclosure proceedings. Before the Court Federal Home Loan Mortgage Corporation's ("Freddie Mac") Motion to Dismiss ("Motion"). (ECF No. 19.) Plaintiff has opposed (ECF No. 20) and Freddie Mac has replied (ECF No. 21). For the reasons discussed below, the Motion is granted.

**II.  BACKGROUND**

The following facts are taken primarily from the Complaint and the briefs relating to Plaintiff's motion for a temporary restraining order. On October 9, 2014, Plaintiff acquired his interest in a residential real property located at 9404 Amber Valley Lane in Las Vegas ("the Property") from Indian Home Program, LLC, Series III. (ECF No. 1-1 at 4, 11.) Since then, he has spent a significant amount of money on improvements to the Property. (*Id.* at 7-8.) The Property is encumbered by a deed of trust to National City

Mortgage to secure a mortgage loan to the previous owner, Dennis Del Re. (ECF No. 12-1.) A subsequent deed of trust ("DOT") was recorded in August 2004 to secure a loan by National City Mortgage.[1] (ECF No. 12-2.)

On September 30, 2013, Defendant MTC Financial Inc. dba Trustee Corps ("MTC" or "Trustee Corps"), as substitute trustee under the DOT, recorded a Notice of Breach and Default and Election to Sale ("NOD"). (ECF No. 12-3.)

On March 10, 2014, Indian Homes recorded a Bankruptcy Trustee's quitclaim deed ("BT Quitclaim Deed"). (ECF No. 12-4.) Indian Homes conveyed the Property to Plaintiff on October 9, 2014. (ECF No. 1-1 at 11.)

Shortly before Plaintiff acquired the Property, Trustee Corps recorded a Notice of Trustee's Sale ("NOTS") on September 23, 2014. (ECF No. 12-5.) After Plaintiff acquired the Property, on November 19, 2015, Trustee Corps recorded a new Notice of Trustee's Sale for December 30, 2015. (ECF No. 12-7.) An assignment of the DOT to Freddie Mac was also recorded on November 19, 2015. (ECF No. 12-8.) Plaintiff alleges that Freddie Mac "holds the mortgage loan encumbering the subject real property." (ECF No. 1-1 at 5.)

On December 28, 2015, Plaintiff initiated this action in state court. (ECF No. 1-1.) Freddie Mac removed the action and has moved for dismissal. (ECF Nos. 1, 19.)

### III. LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels

---

[1] The Court takes judicial notice of the publicly recorded documents in connection with the Property and referenced in this section of the Order. *See Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 866 n.1 (9th Cir. 2004) (the court may take judicial notice of the records of state agencies and other undisputed matters of public record under Fed. R. Evid. 201).

and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id*. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id*. at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id*. at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id*. at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged — but it has not shown — that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (internal quotation marks and alteration omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570. A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

Generally, a court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *U.S. v. Ritchie,* 342 F.3d 903, 907 (9th Cir.2003). One exception to this rule is where, as here, a court take judicial notice of "matters of
///

public record." *See Lee v. Los Angeles,* 250 F.3d 668, 688–89 (9th Cir.2001) (internal citations omitted).

## IV. DISCUSSION

The Complaint asserts three claims for violations of NRS § 107.080, declaratory relief, and unjust enrichment. (Dkt. no. 1-1 at 5-8.) Freddie Mac seeks to dismiss all three claims. The Court will address each claim in turn.

### A. Violations of NRS § 107.080

The Complaint alleges that NRS 107.080(3) and (4)(a) require "Defendants to provide notice of default and election to sell and/or notice of trustee sale to all persons with an interest in the property, including Plaintiff" and Defendants failed to provide Plaintiff with notice of trustee sale.[2] (ECF NO. 1-1 at 5 (emphasis omitted).) Freddie Mac points to the express language of statute to argue that it complied with Nevada's statutory requirements.

The procedures for conducting a trustee's foreclosure sale are set forth in NRS § 107.080. To commence a foreclosure, the beneficiary, the successor in interest of the beneficiary, or the trustee must execute and record a notice of default and election to sell. NRS § 107.080(2)(c). A copy of the notice of default and election to sell must be mailed by registered mail or certified mail with return receipt requested to "the grantor or, to the person who holds the title of record on the date the notice of default and election to sell is recorded, and, if the property is operated as a facility licensed under chapter 449 of NRS, to the State Board of Health, at their respective addresses, if known, otherwise to the address of the trust property. NRS § 107.080(3). The trustee or

---

[2] In response to the Motion, Plaintiff contends that the Complaint should be construed to allege that Freddie Mac violated NRS § 17.080(3)(a) by failing to include in the NOD a description of "the deficiency in performance or payment," which deprived him of the opportunity to cure the default. (ECF No. 20 at 6.) However, the NOD did identify the deficiency as "including but not limited to, the obligations set forth in that certain Promissory Note with a face amount of $207,000.00." (ECF No. 12-3 at 1.) The unpaid balance is identified in the NOTS. (ECF No. 12-7.) Moreover, it is not clear to the Court that Plaintiff has standing to challenge the content of the NOD when he was not among the parties entitled to notice under NRS § 17.080(3)(a).

4

other person authorized to make the sale must wait at least three months after recording the notice of default and election to sell before the sale may proceed. NRS § 107.080(2)(e). After the three month period, the trustee must give notice of the time and place of the sale to the following: "each trustor, any other person entitled to notice pursuant to this section and, if the property is operated as a facility licensed under chapter 449 of NRS, the State Board of Health, by personal service or by mailing the notice by registered or certified mail to the last known address of the trustor and any other person entitled to such notice pursuant to this section." NRS § 107.080(4)(a).

Plaintiff contends that NRS § 107.080(3) requires that the NOD be sent to him as the titleholder of record and the grantor's successor. (ECF No. 20 at 6-8.) However, his argument does not find support in the statute. NRS § 107.080(3) requires that the NOD be sent "to the grantor, or to the person who holds the title of record on the date the notice of default and election to sell is recorded." But Plaintiff did not hold the title to the Property at the time the NOD was recorded on September 30, 2013, or when the first NOTS was recorded on September 23, 2014.[3] Nor is Plaintiff covered within the group who must be given notice under NRS § 107.080(4)(a), which includes "any other person entitled to notice pursuant to this section." Plaintiff does not show how he would fall among this catch-all group.

Plaintiff asserts policy arguments for why NRS § 107.080(3) should be construed to require that the NOD and NOT must be provided to the "current record title holder."[4] (ECF No. 20 at 8-10.) However, NRS § 107.080(3) is unambiguous in identifying the parties who are entitled to notice: the grantor *or* the title holder on the date the NOD is recorded.

///

---

[3] Indeed, Plaintiff acquired the Property in October 2014, more than a year after the NOD was recorded. Plaintiff thus should have had at least constructive notice of the recorded NOD and the first NOTS at the time that he acquired the Property.

[4] Plaintiff also alleges that Freddie Mac violated his constitutional due process rights. This claim is not asserted in the Complaint and it is not clear whether such a claim may be asserted against Defendants.

The Court agrees with Freddie Mac that Plaintiff's claim for violations of NRS § 107.080(3) should be dismissed.

### B.  Declaratory Relief

Plaintiff seeks a declaration that the Property "cannot be sold without providing him with a reasonable opportunity to cure the default on the loan encumbering the property." (ECF No. 1-1 at 6.) Plaintiff relies on *Title Insurance and Trust Co. v. Chicago Title Insurance Co.*, 634 P.2d 1216 (Nev. 1981) to argue that as the title holder, he has a right to cure the default.[5] (ECF No. 20 at 14.) In that case, the Nevada Supreme Court found that a vendee of the grantor of the deed of trust, who had purchased real property from the borrower and grantor of the deed of trust, was a "successor in interest" pursuant to NRS § 107.080(3).[6] The court found that by including a "successor in interest" in NRS § 107.080(3) shows that "the legislature intended that a purchaser of real estate who is a grantor of a deed of trust should have a reasonable opportunity to cure a default or deficiency before the property may be sold by the trustee, and that such opportunity should be extended to one who holds under such a grantor." *Id.* at 1218.

Here, Plaintiff has no contractual relationship with the borrower, Mr. Del Re, such that he may be deemed Mr. Del Re's successor in interest. Plaintiff acquired the Property via a quitclaim deed from Indian Homes, whose interest in the Property was subject to the DOT. (ECF No. 12-4.) Absent a legal relationship with Mr. Del Re or Freddie Mac, Plaintiff cannot show that Freddie Mac must be compelled to give him the opportunity to cure the default.

---

[5] Plaintiff also relies on NRS § 107.080(3)(a) which requires the NOD to describe the deficiency. (ECF No. 20 at 14.) Again, Plaintiff's contention that the NOD failed to describe the deficiency or payment is factually inaccurate. *See* discussion *supra* at n. 2.

[6] The "successor in interest" language was removed from NRS § 107.080(3) in a 1989 amendment to the statute. 1989 Nev. Stat. 1770-71. Rather than requiring that a notice of default and election to sell be mailed to a grantor's successor in interest, the 1989 amendment provides that the mailing may be directed to "the person who holds the title of record on the date the notice of default and election to sell is recorded." 1989 Nev. Stat. 1771. This language appears in the current version of the statute.

Plaintiff asserts that he seeks declaratory relief "on information and belief, that any encumbrance on the subject property was satisfied by the mortgage insurance." (ECF No. 20 at 14.) This allegation is not raised in the Complaint. Even if it was properly raised, Plaintiff cannot seek declaratory relief without asserting a viable claim.

### C.     Unjust Enrichment

"The phrase 'unjust enrichment' is used in law to characterize the result or effect of a failure to make restitution of, or for, property or benefits received under such circumstances as to give rise to a legal or equitable obligation to account therefor." *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (Nev. 1997). "Unjust enrichment occurs when ever [sic] a person has and retains a benefit which in equity and good conscience belongs to another." *Id.* (quotations and citation omitted).

Plaintiff asserts a claim for unjust enrichment, but it is not entirely clear what benefits Defendants purportedly retained that belongs to him. Plaintiff alleges that he has invested in making improvements to the Property and paying expenses on the Property. (ECF No. 1-1 at 8.) He alleges that because "Defendants' deed of trust has been paid in full through the original trustor's mortgage insurance," they are not entitled to seek foreclosure and should not be allowed to retain the proceeds of the sale. (*Id.*) (ECF No. 1-1 at 8.) He further asserts that Defendants would be unjustly enriched if they are allowed to retain the proceeds of the sale on the Property. (*Id.*)

To the extent the recovery that Plaintiff seeks is to prevent foreclosure or to prohibit Defendants from keeping the proceeds of the sale, such recovery is not available under a claim for unjust enrichment. "The doctrine of unjust enrichment or recovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another [or should pay for]." *Leasepartners Corp.,* 942 P.2d at 187 (citing *Lipshie v. Tracy Inv. Co.,* 566 P.2d 819, 824 (1977) ("To permit recovery by quasi-contract where a written

agreement exists would constitute a subversion of contractual principles.")). Defendants are not unjustly enriched at Plaintiff's expense and did not retain a benefit that belongs to Plaintiff.

Freddie Mac argues that Plaintiff's claim is barred by the voluntary payment doctrine, citing to *Nevada Ass'n Services, Inc. v. Dist. Ct.,* 338 P.3d 1250 (Nev. 2014). In that case, the Nevada Supreme Court explained the doctrine as follows:

> The voluntary payment doctrine is an affirmative defense that "provides that one who makes a payment voluntarily cannot recover it on the ground that he was under no legal obligation to make the payment." *Best Buy Stores v. Benderson-Wainberg Assocs.,* 668 F.3d 1019, 1030 (8th Cir.2012) (internal quotations omitted). "The 'voluntary' in the voluntary payment doctrine does not entail the mere payment of the bill or fee." *Putnam v. Time Warner Cable of Se. Wis.,* 255 Wis.2d 447, 649 N.W.2d 626, 632 (2002). Instead, it considers "the willingness of a person to pay a bill *without protest as to its correctness or legality.*" *Id.* at 633. This doctrine serves to promote the "policy goals of certainty and stability" in transactions. *Berrum v. Otto,* 127 Nev. ——, —— n. 5, 255 P.3d 1269, 1273 n. 5 (2011).

*Id.* at 1253-54. This doctrine does not apply to the situation here where Plaintiff is not claiming that he made payments to Defendants and now seeks recovery of that payment.

To the extent Plaintiff's unjust enrichment claim is for recovery of money spent on improvements to the Property, Plaintiff may be able to state a colorable claim depending on the circumstances under which those improvements were made. Because of the scant allegations relating to the improvements to the Property and expenses paid relating to the Property, the Court cannot find that "[t]here is no unjust enrichment." *See Bonneville Power Admin. V. Washington Public Power Supply Sys.,* 956 F.2d 1497, 1505 (9th Cir. 1992). The Court will therefore dismiss Plaintiff's unjust enrichment claim with leave to amend.

**V.   CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and

///

determines that they do not warrant discussion as they do not affect the outcome of Freddie Mac's Motion.

It is therefore ordered that Freddie Mac's Motion to Dismiss (ECF No. 19) is granted. Plaintiff's first two claims for violation of NRS § 107.080 and for declaratory relief are dismissed with prejudice. Plaintiff's third claim for unjust enrichment is dismissed without prejudice and with leave to amend. Should Plaintiff wish to amend his Complaint, he has fifteen (15) days to file an amended complaint to assert a claim for unjust enrichment to cure the deficiencies identified in this Order. Failure to file an amended complaint will result in dismissal of the third claim for unjust enrichment with prejudice.

DATED THIS 21st day of September 2016.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE